Next case is Heard v. Fudge Good morning. Good morning. Thank you, Your Honor. For the audio record, my name is Curtis Flood and I represent Angella Heard, your felon. Ms. Heard was injured in a two-vehicle wreck when she was the passenger, backseat passenger, in a car that failed to successfully pass an 18-wheeler on Interstate 255 on the right. And the last moment, just before the car got clear of the front bumper of the truck, the driver drove into the right lane and struck the car. Rolled over a couple of times. Ms. Heard brought suit against both of the drivers. And St. Clair County jury found in favor of both drivers and against Ms. Heard. The trial court refused to enter a judgment in O.V. and order a new trial. And we are asking for a new trial that is limited to the issues of the percentage fault of the two drivers and the amount of Ms. Heard's damages. And the way I'd like to do this is very quickly discuss the facts, and then I want to talk about the case law. And then I want to discuss something that I discovered while getting ready for this case, that I've made a substantial oversight of the case law. And I'm afraid that this court will also make it, if it's not brought to your attention. Maybe you'll be sharper than I was on that, but I want to make sure. I'll leave that for third. In the practice of law, in the injury practice of law, that is not my particular area of expertise, but in a case where there are two cars that strike each other and your injury client is a passenger in the backseat, that is the gold standard of liability. That's as good as it gets. You know, one thing you're not going to have to worry about is liability. And basically, there's three questions you're interested in getting answers to for your client in that situation. Number one, was there an earthquake or other act of God? Number two, did you grab for the steering wheel or otherwise were you contributorily negligent? Number three, was any damages proven? Showing it off, is there any damages here? Those are the basic three possible exceptions, and none of those exist in this case. No contributory negligence evidence, no contributory negligence instructions. No evidence of an earthquake or other act of God. It was a bright sunny day. How about damages? Did we say, well, this verdict is justified by lack of proof of damages? Well, the truck driver conceded to the jury in his summation, closing summation, that she should get something for some of her doctoring. He disputed some of the damages, but some of them he conceded. Again, this is the gold standard. I mean, I'm going to talk about cases now, but this court doesn't need cases. I mean, if this had never happened before, this court could do this. But, there are cases. There's the Perlman, Turner, Crumb, and Millett cases. In which the appellate court has said, yes, there's a presumption in a circumstance like this. Two cars wrecked, there's no other explanation for it. There's 100% of fault here, and it's on either one driver or the other driver, or they're splitting it up. In particular, the Perlman case. Plaintiffs are owners of two parked cars. There's a wreck. The wrecks pile over the parked cars. The jury found for the defendants, just like in this case. Perlman court says, oh, we're presuming negligence in this case. And remanded for a trial limit issue of who was at fault and damages. Just as we asked this court to do. The Turner case. It's procedurally distinguishable, but otherwise indistinguishable from this case. You've got a passenger on a streetcar. Streetcar collides with a truck. Trial court directs a verdict for the defendants, and that's the distinction. The appellate court reversed and writes, accident results from operation of two vehicles. Without another explanation, we're presuming, presuming want of proper care. And basically the same thing. Distinguishable only in that a building was struck instead of a passenger injured. But the trial court directed a verdict because drivers were pointing fingers at each other. And plaintiffs couldn't prove which one of them caused it. The appellate court reversed and said, no, no, two automobiles collide under normal conditions. It's presumed the collision occurred from negligent operation of one or both. There's also the Lillette case, but it's basically the same thing. I'm going to go on by it. It's important to understand that Redmond versus Socia, the significance of it to this case. Redmond was written by Justice Garment for a unanimous Supreme Court. And in it, well, the facts are that two cars collide. But here, instead of a third party, like the owner of the building that we saw in one case or a passenger, here are the drivers suing each other. There was no other parties in the Redmond case. And the Redmond court, the Supreme Court, was asked, this is 2005 now, to apply this line of cases that I've just discussed. And our Supreme Court said, no, that doesn't work that way when you have just two parties. The jury can find that neither of them proved your case. But what's important about this is that here you have, in 2005, Justice Garment for a unanimous court discussing this line of cases. And the reason that's going to be important is that although Justice Garment distinguished that line of cases, the court did not give any hint that those were not good laws. Actually, it seemed to have proved them. The reason that's important is the Restatement II of Torres was published in 1965. And that, which means that it was in existence for 40 years before the Supreme Court decided Redmond. Now, the main flying ointment for my case has been the amazing case of Anderson v. Anderson, 2011, in which the First District Division was faced with this. The jury found for both of the drivers against the passengers in one of the cars, just like this case, but unlike this case, the trial court said, well, I'm giving you a new truck. And First District, Fifth Division reversed. No, no, there's no presumption here. And relied on a restatement, which, like I say, had been around for 40 years at the time that the Redmond court was discussed. I did not realize this. At the same time, it's a shame I didn't catch it sooner and gratified that I caught it at all. But Anderson is wrong. Anderson is just wrong. Well, Anderson is not present, either, because it's a First District case and not Supreme Court. Well, I would be remiss, Your Honor, if I didn't point out from the statement. I mean, it got by me until a couple of days ago. The Anderson court said that the line of cases from Paroleman Turner had been superseded by restatement section 433B. And I thought, well, okay, it hasn't been expressly overruled, but it was reasonable. I took that at face value. It wasn't until this week that I realized that the Anderson court, there was no brief file for the passengers, apparently no documentation of any sort filed for the passengers, and the First District cited the wrong part of the restatement. The First District cited the rule that where the conduct of two or more actors is tortious, and it is proved that the harm has been caused to the plaintiff by only one of them, but there is uncertainty as to who caused it. The burden is upon each actor to prove that he has not caused the harm. Again, and it is proved that the harm has been caused by only one of them. That's not an automobile collision case. We don't know who's caused the harm. That's for the jury to decide. What this rule that the Anderson court cited is about is the Summers v. Tice case, which I had to read for my very first day in law school. Summers v. Tice, California Supreme Court, 1948. Three hunters are out in the field. Plaintiff, two defendants. Two defendants have identical shotguns, identical shot in the shotguns. Plaintiff tells them, stay in the line and be careful. Somehow they get into a triangle position. One of the defendants flushes a quail, and both defendants fire in the direction of the plaintiff. Bench trial. It's shown that two pellets struck the plaintiff. One in the lip, and that was nothing. Our Vice President Cheney did worse than that. But the other one went in the plaintiff's eye. That's what the case was about. I mean, it's possible that the two pellets could have come from different guns, but the court immediately zeroed in on it. We don't care about the lip pellet. We care about the eye pellet. Obviously, one of these defendants did not cause the eye injury. So the question is whether the trial court's bench trial verdict for the plaintiff against both defendants could stand. And the California Supreme Court held it equal. They were both shown to be negligent. Neither of them proved that he wasn't the one that fired the eye shot. That's the rule in Summers v. Tice, and that's the rule in the restatement that the Anderson court cited. Wrong rule. Wrong rule. This is a contribution situation. This is a situation where two drivers are either... One is entirely at fault, the other is not, or they are both at fault to some extent. And their total is 100%. But nobody... My last check yesterday, nobody cited Anderson for anything. And it's a hazardous site. Somebody eventually is going to say that the Emperor is not wearing any clothes on Anderson. It's going to point out the error. And you really can't blame the First District. Like I said, they didn't have a brief, no petition for re-hearing, no PLA. But look out for Anderson. And that, really, that is the case that makes Crump, Perlman, and Turner spring up with red-yellow flags on Westlaw. Anderson. It's not good law. Anderson. I mean, Crump, Perlman, Turner are good law. They are good law. And there's a presumption in this case. There's a presumption. Two vehicles crash, and there's no other explanation. Those drivers. One of them, both of them are liable. And again, you don't even need the cases in this situation. It's so obvious. We ask for a reimbursement for Mann and a new trial. This time, limited to the issue of the amount of misheard standards. And the percentage of fault of the two defendants totaled to equal 100%. Thank you. Thank you. My name is Joe Swift. I'm here on behalf of Robert Fudge. Well, we would like the court to affirm. Oh, he's the truck driver. Yes, sir. He's the truck driver. He was driving alongside Mr. Renaldo Jackson. Jackson came up on the right. They collided. Misheard was a passenger. Did Jackson then cut over into the left lane and hit him? Somewhat disputed. Huh? That's disputed? Well, plaintiff's expert, Francis Oldham, said it was iffy. He had an accident. He called an accident reconstructionist who was ambivalent about it in the trial court. We feel Judge Guido should be affirmed. So the truck wasn't turning at the time? Not turning, sir. It was a lane merge on your state 55. Well, you got to turn to get a merge, don't you? Yes, sir. I mean, how else are you going to get over there? He turned his wheel. Okay. He said, he testified that he... I thought I read this, and I just, that's what I thought. No, it was a lane to lane, and like I said, Francis Oldham testified that perhaps Mr. Jackson was going faster than he should have, but it was iffy at best. Is it 65 zone? 60 or 65, I don't know. Well, Illinois. Wait a chance, okay. Anyway, but yeah, factually, I don't think there's a big dispute as to the fact. The important thing about the way Mr. Fudge operated his tractor trailer was that he used ordinary care, at least according to the jury. The evidence was that he looked, sped up, slowed down, tried to check his blind spot in his mirror, turned his signal on and started to merge over, and that's when the collision occurred. My question is, is blind spot kind of a king's ex? In other words, he's in my blind spot. I can hit him. Not according to how Mr. Fudge testified, because he did say he accommodated or tried to accommodate for the blind spot by speeding up, slowing down, and looking, so he could try to eliminate the blind spot because, you know, as we know, it's only on, you know, basically the side, kind of past the passenger side door to the end of the trailer. Right. There's also a blind spot, or actually the Illinois driver's manual talks about no zones, they call them, which is actually even in front of the tractor trailer. Well, I was always wondering about the caution. This truck makes wide turns. Does that mean he can drive over the car in the right lane when he's turning right at an intersection? Most people in the right lane don't believe that. No, no, I mean, I don't know what the case law says. Well, the case law says he has exercised ordinary care. So he's ordinary careful, but he still drives over the front of a guy's car. Well, a jury may say that that's not ordinary care, but in this case, the jury was asked whether or not Mr. Fudge exercised ordinary care, and the jury decided he did. I mean, that's how it was submitted. First off, I don't know. I mean, the presumption was not presented to Judge Quito. This alternative liability theory was not presented to Judge Quito. Now, he said something, no, didn't he? This guy interested him. Well, he said he thought that, and actually, to Mr. Blood's point in the brief, he said he didn't think that Judge Quito exercised discretion, so this court should have a de novo review. What did Judge Quito say? As Judge Quito said, I think the jury got it wrong, but that's not the standard, because I think he was judging it on the manifest way to the evidence. That wasn't in the JNOB portion. And what is the standard, then? For the JNOB? Mm-hmm. It's properly entered only, a JNOB is properly entered only in those limited cases where all the evidence, when reviewed most favorable to the opponent or Mr. Fudge, so overwhelmingly favors the movement or misheard. No contrary verdict based on the evidence could stand. I think that's agreed case law. I mean, that's the standard. Judge Quito had a post-trial motion. We contend that the post-trial motion did not preserve anything because it didn't specifically identify any specific evidence or even really evidentiary rulings. But be that as it may, Judge Quito agreed that the post-trial motion preserved, but he weighed the evidence or looked at the evidence and said there's evidence here to support the jury's verdict. And that's how the case was submitted. I contend that misheard weighed any error because she didn't ask for anything specifically in the post-trial motion. And also, Judge Quito was never asked to apply a presumption. He was never asked to apply this alternative liability theory we see in the brief. It appears that Judge Quito did not abuse his discretion, in my opinion. He said that his standard was the jury's verdict was not against the manifest way of the evidence. A jury has given substantial deference. They heard, observed, saw the evidence, weighed it, deliberated, and came back with an unanimous verdict on behalf of both defendants. And as I mentioned, we feel that Mr. Fudge did exercise ordinary care. And I guess the jury agreed because that's how they were instructed, and that's what they came back with an unanimous verdict for. That's on the new trial. On the J&OB, it's even a harder, steeper slope, but I believe Mr. Blood's correct in that instance that this court does have the authority to look at that de novo. But I think since there is evidence to support the verdict, it would be very difficult to enter or affirm or order a J&OB or judgment notwithstanding the verdict in the underlying case. As I mentioned, I don't believe that the post-trial motion preserved anything for appeal because it simply said it was contrary to the manifest way of the evidence. He didn't specify anything. And I think the Felt v. Oaklawn Lodge case requires the appellant in this case to ask the trial court and to point out to the trial court, give the trial court the chance to make the right ruling and, hey, you made an error. This should have been submitted this way. It wasn't. Give us a new trial. And Judge Guido was not given that opportunity. Mr. Blood was eloquent. I do believe, though, even under the Redmond case, that tends to eliminate presumption, in my opinion, because in all these cases, the court, and this is the Illinois Supreme Court, says that you still have the burden of proving. And he says, we conclude that because the law demands that a plaintiff meet the burden of proving every necessary element of his claim by preponderance of the evidence, a jury may find against both the plaintiff and the counterplaintiff in a negligence action, even when the evidence suggests the sole cause of the accident was the negligence of either or both of the parties. Meaning, that's what Redmond says, that Redmond was a motorcycle car accident case where it was submitted and they shoot each other, basically went for property damage, went for personal injury. And the argument was made, well, somebody must be liable. In this case, you still have to prove. And just like Ms. Hurd still had to prove that Mr. Fudge was negligent. And that's how it was submitted. And unfortunately for Ms. Hurd and unfortunately for Mr. Fudge, the jury decided he was not negligent. I thought she alleged to me that either or, or both. But she's, yes, sir, she did. And she was a passenger. I mean, there's no tributary fault. I agree. There's no comparative fault. But she had, she submitted it. I mean, and again, the trial court was not given an opportunity to apply a presumption. There was no presumption was asked for. It was submitted as to both with the verdict director specifically that Fudge failed to keep a careful lookout. Fudge changed lanes without making sure it was safe to do so. Jackson passed the truck on the right, and Jackson took too much time to pass the truck. But they also said that they've also got to show that there was negligence involved by both drivers. And the jury, of course, was instructed as to the standard of negligence, which is ordinary care. And the jury obviously weighed that evidence and decided that both drivers exercised ordinary care even though a delusion had occurred. It's not a strict liability submission. They still have to prove their case. And that's what Redmond. Well, I noticed you talked about passing on the right. There's no statute that says you can't do that or you shouldn't do that. I guess you can't do that. I mean, you can pass on the right all day. On that highway at that time. On a three-lane highway. It doesn't matter what time. After 9 o'clock, you can't. No, it doesn't have anything like that. No, sir. There was no, but that's how plaintiff chose to submit it. We didn't submit across the lane. That's how plaintiff chose to submit as to Mr. Jackson. It was really beyond our control. Let me ask Judge Guido. I guess the instructions might be instructive. Yes, sir. Well, hopefully. And I think they were in this case because I think the jury got it right because I think there was evidence to support the verdict that they entered. And just briefly, the Anderson case, which apparently, you know, even though Mr. Blood had cited that, it does still hold out that even though it seems like we're getting confused with, I guess, causation and the defendants battling out a causation thing like the Summer versus Tice rule. I mean, in that case, it was people shooting guns. And I think there's a strict liability for shooting a gun. And therefore, the jury was allowed to decide which of the liable defendants. But in this case, they didn't get to liable defendants because he didn't, he had to prove that both defendants were negligent for the Anderson, I guess. Well, in this case here, it's kind of interesting. It's either or or both, isn't it, is on liability.  And the jury was given the opportunity. So this accident was just, I have a hard time just figuring this out, that it couldn't be, how could you hit a truck and somebody not be at fault and turn over, you know? The jury found that and given the ordinary care instruction that both drivers exercise ordinary care. The car flipped over and went end over end or something like that. Yes, sir. After it came in front of our truck, it rolled end over end. But I guess what it means is that accidents happen without anyone being at fault or being negligent. Meaning that there is a burden of proving that someone's negligent. So your argument is then that the driver of the Chevrolet, the car was probably negligent. Well, then we'll argue the difference here, back and forth. However. Well, I don't even know if he's negligent. I know that sounds crazy, I guess. But my point is, it's not my burden. Right, I understand that. They're negligent. We didn't file a cross-claim against Mr. Jackson. You know, Ms. Hurd, interestingly, Mr. Jackson is Ms. Hurd's nephew, and that's why she was in the car with him. She's the one that tried to prove that he was negligent, and the jury didn't agree. The jury did not find either driver negligent. I think it's the difference between accidents happen sometimes without either party being at fault or negligent. So we would ask this court to please affirm the judgment on the truck. Thank you. Thank you. Anything else, counsel? No, we've got. She's got. Oh, okay. May it please the court, Mr. Blood, Mr. Swift. I'll try not to be repetitive. I think Mr. Swift has covered a lot of arguments that apply to Renaldo Jackson, who I'm here representing as well. My name is Dominique Seymour. I apologize. I'd first like to note that the only post-trial relief asked for against my client, Renaldo Jackson, was for a new trial, not for JNOB. And, of course, your honors are familiar with the standard for a new trial. And essentially, I'd like to point out that plaintiff in her brief actually conceded that the verdict in favor of Renaldo Jackson did find support in the evidence. And I believe the review of the evidence and the testimony certainly shows that Judge Guido properly exercised his discretion in denying the new trial against my client, Renaldo Jackson. Plaintiff herself testified that he was driving very carefully, that he was driving the speed limit, that he did not go into the other lane, that he was not driving erratically. Certainly, there was ample support for the jury to find that Renaldo Jackson did not do anything wrong. As your honor pointed out, driving on the right-hand lane of a three-lane interstate is not prohibited by any statute. There's no indication that he ever left his lane. While there certainly may be blind spots on large semi-tractor trailers, there's blind spots on every vehicle at some point on the interstate. So there's certainly no evidence whatsoever that Renaldo Jackson did anything negligent. And I believe that the jury was correct in finding the verdict awarded in his favor. I'd like to point out that I do believe the Anderson decision is a well-reasoned decision. I realize it is not precedential to this court, but I think if you read it, you'll find that it is well-reasoned. And it makes some very good points. And essentially, as the co-defendant, Mr. Fudge, cited in his brief, the mere happening of an accident does not indicate that there was negligence. There are certainly situations where accidents can happen, and no party is negligent. I'd also like to point out that in the line of cases, the Perlman, Turner, Crump, and Millett cases, in the Turner and Crump cases, those were cases where the court directed a verdict and didn't even give the jury an opportunity to decide the cases. In the Perlman case, the court decision notes that the trial court itself repeatedly told the jurors that there was no evidence of negligence. So I think that that's an important distinguisher there. And in the Millett case, the court says in that decision that the basic question before the court is whether, based on all the evidence, a verdict for all three defendants in that case could ever stand. And then they cite the Pedrick standard, which is essentially, of course, the standard for J&OB. And so that's the question, I believe, here. And I believe under the evidence that the plaintiff presented, under which she admitted she had the burden at the trial court, her attorney did not submit any instructions suggesting the burden was in any way placed on defendants. Her attorney acknowledged at the closing argument that the burden rested with her. Her attorney did not object to the submission of IPI 36.01, which says if you find in favor of the defendants, you'll have no occasion to consider damages. Her attorney did not object to the submission of the verdict forms that allowed the jury to find in favor of the defendants, which is what they did in this case. And I believe, looking at all of the evidence in the case, that the jury very well could find that this was a situation where an accident happened but no party was negligent. Certainly, I believe the evidence overwhelmingly favors the verdict in favor of Bernaldo Jackson, who is my client. And also, I believe that based on the testimony that was presented from Mr. Fudge, that I could understand where the jury found that he did exercise ordinary care. Certainly. I thought there was some expert that testified that Mr. Jackson could have driven into the truck or something like that. What was that? The plaintiff's expert witness, Francis Oldham, who was a mechanical engineer, testified that, and I think he came into the case late in the game. So when he went out to the scene, he testified based on what he had, which was photographs and testimony, that he couldn't say for sure whether the truck entered into Mr. Jackson's lane or whether Mr. Jackson went into the truck's lane. He did go on to say, though, that in his opinion, based on what he had, based on some sort of – and I apologize, I was not at the trial, but my understanding from reading the transcript was based on something shown in the photograph, some sort of short angle on the damages of the car, that it was his opinion that Mr. Fudge actually went into Mr. Jackson's lane. Mr. Fudge himself never saw the car until I believe it was actually in front of this truck. He never saw it at any point prior to it actually having already been hit. And then the plaintiff herself testified that Rinaldo Jackson did not leave his lane, that he was simply driving in the right-hand lane trying to get in front of the truck, and that there was never any signal from the truck, and that the truck moved into their lane. I thought he did say – well, of course, he said he signaled, but he said he signaled. The truck driver said he signaled, right. But Jackson never saw a signal? Jackson never saw a signal. The plaintiff, who said she was in a position in the car where she could see, basically see the truck to her left, that she never saw a signal either. So that's another disputed fact, actually, was whether there was or was not a signal. But I believe, applying the Pedrick standard to this case, that the jury's verdicts in favor of both defendants should be affirmed. Now, did the – part of the truck that was hit, was that the tractor? Yes. And about the running board to the front fender or something like that? I don't know. That I don't know, Your Honor. They didn't testify to that? No. I think there was some testimony on it. I don't recall it specifically off the top of my head. Well, was there any testimony – is this the kind of tractor that has a lower glass in the door? You know, I know there was testimony – Was there any testimony on that? There was testimony about that. I couldn't glean from the transcript whether Mr. Fudge's truck had that window or did not. I know that Mr. Oldham, the expert, talked about it, and Mr. Fudge was questioned by plaintiff's counsel about – you're talking about the lower window? Lower glass, yes. Right. Mr. Fudge essentially said that, really, in his experience, those windows didn't provide any sort of vision anyway. Even if there was a car there, he couldn't see it? That was my understanding from reading the transcript, that he basically – the way I understood it was he said that the makeup of the truck really doesn't – there's either a seat or some sort of dashboard or something. I couldn't tell exactly – Was there any junk on the floor or anything? Was there any testimony to that? No, I don't believe so. Okay. We would request that the plaintiff's appeal be denied and that the verdicts in this case be upheld, in particular, the verdict in favor of Reynaldo Jackson. If there are no other questions, I'll stop here. Thank you. Now, counsel. Thanks again, Your Honor. Some of the questions, in fact, the contact was a front bumper. There was $1,300 damaged to the front bumper of the truck. Just barely caught the front bumper. The trucker testified that he was in the right lane. He went into the right lane. That was his own testimony. I was looking for it. I thought I read last night that there was a lower glass in this truck, but the driver went on to say that it wouldn't have helped him. He said that the main importance of that window was it made it easier for people to break into your cab. Did they ever say what part of the front bumper in the car contacted? Was it the front of the car, the side of the car, the door of the car, the rear of the car? Just barely caught the rear of the car. The rear? Yes. Okay. The car almost got clear. Okay. And that, of course, pivoted it, and it ended up being pushed down the road. Okay. Just to clarify, there was no special interrogatory on the subject of the trucker's care. It sounded like that was implied today, but there wasn't. The expert did testify that with the right mirrors, there is no blind spot on the right side. About passing on the right, I mean, I'm driving down the road. Having worked on this case, I'm looking at these trucks, and I see these signs, don't pass on the right. But my favorite was two signs on the truck. The left one said, pass on the left and be the leader. Pass on the right and meet St. Peter. Mr. Swift argued, well, it's not my burden. It's not my burden to prove that. But that's not what Perlman, Turner, Crump, and Mollett say. They say, yes, it is. They say in a circumstance like this, two drivers, you've got no other explanation. Yes, it is. It's a presumption. That's a burden in cases. Use that word. Yes. It's not my burden is incorrect in this limited circumstance. Perlman, Turner, Crump show that this sort of thing happens. I mean, juries don't always get this right. Courts don't always get this right. But Perlman, Turner, and Crump are all reversals of judgments by the appellate court. Mollett, what happened was the trial court instructed the jury that it had to find against one or all of the defendants in favor of the plaintiff. It had to. Directed the verdict. And the question was whether, under the Pedrick standard, that was right. And the appellate court said, yes, yes. No contrary verdict could ever stand. That's right. These are solid authorities. They're good authorities. And once the eyesore of anything is removed from the list of precedent, they're uncontested. All right. If there are no questions from the court, we appreciate the opportunity. Thank you. We'll take about five minutes.